IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICOLE RANDO, individually and on behalf of all others similarly situated, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 17-701(JBS/AMD) |
| v. | |
| EDIBLE ARRANGEMENTS INTERNATIONAL, LLC, | **OPINION** |
| Defendant. | |

APPEARANCES:

Mark W. Morris, Esq.
CLARK LAW FIRM
811 16th Ave.
Belmar, NJ 07719
    Attorney for Plaintiff

James S. Richter, Esq.
Keiyana B. Fordham, Esq.
WINSTON & STRAWN, LLP
200 Park Ave.
New York, NY 10166
    Attorneys for Defendants

**SIMANDLE, District Judge:**

## I.    INTRODUCTION

    Plaintiff Nicole Rando brings this putative class action

against Defendant Edible Arrangements International, LLC[1] ("EA"),

---

[1] While this is the name that appears in the caption, Defendant points out that the correct name is Edible International, LLC. [Docket Item 5-1 at 6 n.1.] Defendant also refers to itself,

alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq., based on commercial text messages EA allegedly sent to Plaintiff after, she claims, she revoked her consent to receive such text messages. [Docket Item 1.] Before the Court is Defendant's motion to dismiss. [Docket Item 5.] Plaintiff has filed a Response [Docket Item 10], Defendant has filed a Reply [Docket Item 15], and both parties have submitted letters containing supplemental authority [Docket Items 16-19].

Defendant argues, in the main, that Plaintiff lacks standing and that Plaintiff cannot maintain a claim that Defendant sent her text messages after she revoked her consent because Plaintiff does not plausibly allege that her method of revocation was reasonable, thereby rendering it ineffective. [Docket Item 15 at 12.] For the reasons that follow, the Court finds Plaintiff has Article III standing but will grant Defendant's motion to dismiss for failure to state a claim under the TCPA.

---

however, as Edible Arrangements, the name under which it operates its retail business. Id. The Court therefore finds it expedient to refer to it herein as "Defendant" or "EA."

## II.  BACKGROUND[2]

Plaintiff Nicole Rando, a New Jersey resident, consented to receive text messages from Defendant, a corporation headquartered in Connecticut, in December of 2016. [Docket Item 1, Complaint, ¶ 12.] Plaintiff alleges that "Defendant placed these text messages using an 'automatic telephone dialing system' ('ATDS') as defined by 47 U.S.C. § 227(a)(1)." Id.

Plaintiff later "withdrew consent to receive further commercial texts and notified Defendant to stop sending her commercial text messages – multiple times – each time using a reasonable method. For example, Plaintiff instructed Defendant by text: (1) 'Take my contact info off please'; (2) 'I want to confirm that I have been removed off your contacts'; (3) 'I asked to be removed from this service a few times. Stop the messages.' and (4) 'Again I want to stop this service thank you.'" Id. at ¶ 13.

Plaintiff alleges that Defendant nevertheless continued to send her text messages, and claims that these text messages violated the TCPA because they occurred after EA impermissibly designated an exclusive means for the revocation of consent to receive such text messages. Id. at ¶¶ 13-16. Plaintiff also

---

[2] For purposes of the pending motion, the Court accepts as true the version of events set forth in the complaint, documents explicitly relied upon in the complaint, and matters of public record. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

makes class action allegations against Defendant. Id. at ¶¶ 16-27. Plaintiff pleads two claims for relief: the first for negligent violations of TCPA, id. at ¶¶ 28-32, and the second for knowing and/or willful violations of TCPA, id. at ¶¶ 33-37.

Defendant, citing the declaration of Drew Sirico, Senior Director of Marketing at EA [Docket Item 5-2], and the related records of the text messages between Plaintiff and Defendant [Docket Item 5-3][3], notes that every text message Defendant sent to Plaintiff--after Plaintiff's initial consent--ended with the words, "Reply HELP for help. STOP to cancel." [Docket Item 5-3 at 2.] It is undisputed that Plaintiff did not reply using the single word "STOP," but rather sent ten separate messages containing natural language stating her desire to stop receiving text messages instead (including, eventually, sentence-long messages containing the word "stop," in lowercase) on and between December 8, 2016 to January 12, 2017. Id.

---

[3] While the record of the text messages is not part of the Complaint, "the Court may consider any document 'integral to or explicitly replied upon in the complaint." Viggiano v. Kohl's Dep't Stores, Inc., No. 17-243-BRM-TJB, 2017 WL 5668000, at *3 n.2 (D.N.J. Nov. 27, 2017)(citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) and relying on Terms and Conditions of Mobile Sales Alert program where they "form[ed] the basis of the agreement giving rise to [the] litigation" and were therefore "integral to the Complaint")(emphasis in original).

## III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading

that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

## IV. ANALYSIS

Defendant moves to dismiss on a variety of grounds. First, Defendant claims that the Complaint fails to state a claim, either because Plaintiff does not plausibly allege that she revoked her consent to receive automated text messages [Docket Item 5-1 at 13-17], or because she failed to plausibly allege that Defendant used an ATDS. Id. at 17-19. Second, Defendant argues that Plaintiff lacks Article III standing. Id. at 10-13. Finally, Defendant argues that the class allegations should be stricken from the Complaint. Id. at 19-22.

The Court turns to these arguments, beginning with Article III standing.

### A. Standing

Defendant argues that Plaintiff lacks standing under Article III of the United States Constitution because she does not plead a sufficient injury in fact (having not suffered a "cognizable concrete harm"), thereby divesting this Court of jurisdiction. [Docket Item 5-1 at 10.] The Court disagrees.

A plaintiff must, in order to have standing to bring a case within the meaning of Article III's "case or controversy"

6

requirement, "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Defendant cites several cases for the proposition that alleging merely the receipt of unwanted text messages does not sufficiently allege a concrete and particularized injury beyond the bare statutory violation outlined in the TCPA, arguing that "courts around the country have also found no standing to bring TCPA claims after Spokeo," e.g., Zemel v. CSC Holdings LLC, No. 16-4064, 2017 WL 1503995 (D.N.J. Apr. 26, 2017); Susinno v. Work Out World, Inc., No. 3:15-cv-05881 (D.N.J. Aug. 1, 2016)[4]; Sartin v. EKF Diagnostics, Inc., No. 16-1816, 2016 WL 3598297, at *3 (E.D.La. July 5, 2016); Stoops v. Wells Fargo Bank, N.A., No. 3:15-83, 2016 WL 3566266, at *8-*13 (W.D.Pa. June 24, 2016). Defendant argues that the Complaint alleges only the bare statutory violation and "is exactly the kind of case the Supreme Court had in mind when it made clear in Spokeo that bare statutory violations do not equal an injury-in-fact and thus cannot confer Article III standing." [Docket Item 5-1 at 13.]

---

[4] The decision in Susinno has subsequently been reversed and remanded, 862 F.3d 346 (3d Cir. 2017).

This Court notes that the Third Circuit has stated that "[i]n the absence of any indication to the contrary, we understand that the Spokeo Court meant to reiterate traditional notions of standing[.]" In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 638 (3d Cir. 2017). Thus, to the extent that Defendant marks Spokeo as representing a turning point for putative-TCPA-plaintiffs who will no longer be able to adequately allege an injury-in-fact based on an invasion of privacy due to the violation of the TCPA, this Court cannot agree.

The Third Circuit, building off its decision in In re Horizon, recently found that "in asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, [the plaintiff's] complaint asserts 'the very harm that Congress sought to prevent,' arising from prototypical conduct proscribed by the TCPA." Susinno v. Work Out World, Inc., 862 F.3d 346, 351 (3d Cir. 2017). The court also cited Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017), to support its finding that the plaintiff "alleged a concrete, albeit intangible, harm under the Supreme Court's decision in Spokeo and our decision in Horizon." Susinno, 862 F.3d at 352.

This Court understands Plaintiff to allege the same "concrete, albeit intangible, harm" sufficient to grant her

Article III standing under these precedents. While Defendant submits that the critical difference is that here, Plaintiff solicited these text messages, the Court reads her Complaint to clearly allege that, at least once Plaintiff attempted to withdraw her consent (discussed at length, _infra_), the text messages she continued to receive were now unwanted, unwelcome, and effectively unsolicited. Plaintiff alleges that she is a person directly aggrieved by the statutory violation she alleges, and the Court therefore concludes that she has Article III standing. See also Epps v. Earth Fare, 2017 WL 1424637, at *3-*4 (plaintiff adequately asserts concrete injury for standing purposes, though her complaint fails to state a TCPA claim).

### B. Failure to State a Claim: Revocation of Consent

The primary question before this Court appears to be the legal effect of replying to an unwanted commercial text message using language that would, if read by a human being, clearly indicate a desire to revoke consent to receive text messages, but not using the required (and clearly-stated to the consumer) language that the computerized texting service would recognize as effecting such a revocation. If such a method is sufficient to revoke consent, then Defendant may be liable for continuing to send text messages to Plaintiff after such a revocation. If that method is not sufficient, then Plaintiff does not state a

claim that Defendant continued to send text messages after she revoked her consent and thereby violated the TCPA.

Plaintiff submits that her text messages should be held to constitute effective revocation because they were reasonable, and because a defendant may not designate an exclusive means of revocation. [Docket Item 10 at 21-30.] Plaintiff's claim, in fact, is that Defendant violated the TCPA not only by continuing to contact her after she revoked her consent, but also by designating an exclusive means by which consumers could revoke consent [Docket Item 1 ¶¶ 11, 16, 22(b), 25, 34]; the class she purports to represent consists of "[a]ll persons in the United States to whom Defendant has sent any automated commercial text message during the applicable statute of limitations period after designating an exclusive means by which consumers may revoke consent to receive text messages from Defendant." Id. ¶ 16.

Defendant urges the Court to find, however, that Plaintiff's method of revocation was no more than a legally invalid, attempted revocation because it was unreasonable under the circumstances. [Docket Item 5-1 at 13-17.]

The TCPA "prohibits any person, absent the prior express consent of a telephone-call recipient, from 'mak[ing] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a paging service [or] cellular

10

telephone service.'" Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 666-67 (2016)(citing 47 U.S.C. § 227(b)(1)(A)(iii)). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii). For damages occasioned by conduct violating the TCPA, § 227(b)(3) authorizes a private right of action. A plaintiff successful in such an action may recover her actual monetary loss or $500 for each violation, whichever is greater. Damages may be trebled if the defendant willfully or knowingly violated" the TCPA. Campbell-Ewald Co., 136 S.Ct. at 667 (internal citations and quotations omitted). The TCPA "allows consumers to revoke their prior express consent[.]" Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 270 (3d Cir. 2013).

The FCC has spoken to the determination of effective revocation of consent, and the Third Circuit has "afford[ed] some deference to the FCC's decision" regarding the TCPA on an analogous case. Id. at 271 n.5 (citing United States v. Mead Corp., 533 U.S. 218, 234 (2001)("An agency interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires.")(internal citations omitted)).

The parties submit that two FCC records that speak to the question at hand.

In 2014, the FCC approved an exemption for a caller sending automated text messages where, among other conditions, those "text notifications . . . include[d] the ability for the recipient to opt out by replying 'STOP.'" 29 FCC Rcd. 3432, 3438 ¶ 18(7) (Mar. 27, 2014)("Cargo Airline Order"). Defendant submits that this shows the FCC's approval of such a system as "a valid means for marketers to receive and process revocations of prior express consent to receive marketing texts." [Docket Item 5-1 at 14.] Plaintiff notes several limitations on the FCC's grant of that exemption and submits that, because Defendant's messages did not comply with all those limitations (e.g., its messages contained commercial or advertising content, and were not free to the consumer-recipient), the Court should not view the sanctioning of the "STOP" opt-out method as a more general seal of approval of that method. [Docket Item 10 at 23-25.]

The FCC has, though, recently spoken to the more general question, and the Court finds its statements instructive. The FCC stated, in response to the question "whether a caller can designate the exclusive means by which consumers must revoke consent," that "callers may not control consumers' ability to revoke consent[,]" "consumers may revoke consent in any manner

that clearly expresses a desire not to receive further messages, and . . . callers may not infringe on that ability by designating an exclusive means to revoke." 30 FCC Rcd. 7961, 7996 ¶ 63. However, the FCC continued:

> Consumers have a right to revoke consent, using any reasonable method including orally or in writing. Consumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities. We find that in these situations, callers typically will not find it overly burdensome to implement mechanisms to record and effectuate a consumer request to revoke his or her consent.

Id. ¶ 64. The FCC noted:

> When assessing whether any particular means of revocation used by a consumer was reasonable, we will look to the totality of the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance, and whether the caller could have implemented mechanisms to effectuate a requested revocation without incurring undue burdens. We caution that callers may not deliberately design systems or operations in ways that make it difficult or impossible to effectuate revocation.

Id. n.233. The FCC noted several examples, including the Cargo Airline Order, and stated that the "common thread linking these cases is that consumers must be able to respond to an unwanted call--using either a reasonable oral method or a reasonable method in writing--to prevent future calls." Id. at ¶ 64.

The specific statement that a caller may not "infringe on [a consumer's] ability" to "revoke consent in any manner that clearly expresses a desire not to receive further messages" "by designating an exclusive means to revoke[,]" 2015 Order ¶ 63, seems to be in some tension with the immediately-following statements that "[c]onsumers have a right to revoke consent, using any reasonable method" and that the assessment of whether a valid revocation occurred will be whether a "particular means of revocation used by a consumer was reasonable" while looking to the "totality of the facts and circumstances[.]" Id. at ¶ 64, 64 n.233.

The latter statements imply that a consumer may not validly revoke if their method of revocation is held to be, under the totality of the circumstances, unreasonable; if such a revocation was invalid, then the consumer's prior express consent controls and the caller would not be liable for violating the TCPA. The former statement implies that a caller is liable for violating the TCPA when it designates an exclusive means of revocation, regardless of whether it forecloses a reasonable method of revocation or not, because it states that a caller is responsible for honoring a revocation made "in any manner that clearly expresses a desire not to receive further messages" (but is nevertheless not reasonable). Of course, this is precisely the scenario at issue in this case: Plaintiff's

attempted method of revocation, notwithstanding that it "clearly express[ed] a desire not to receive further messages," is nevertheless claimed to be unreasonable.

These two premises seem to be in some tension with each other, but another court within this district has found that the latter statements better state the rule: "Plaintiff bases her claim on the fact that Defendant specified a means of opting out. The FCC's ruling[s] are clear--a caller may not designate a method of opting out 'in ways that make it difficult or impossible to effectuate revocations[.]' 30 FCC Rcd. at 7996 ¶ 64 n.233[.] Plaintiff's arguments to the contrary defy both the FCC's rulings and common sense." <u>Viggiano</u>, 2017 WL 5668000, at *4.

The Court agrees. The relevant provision of the TCPA is violated not when a caller has certain internal policies, but when it calls a cell phone, e.g., without a consumer's prior express consent. The FCC's regulations outline when such prior express consent can fairly be said to be vitiated by virtue of the consumer's revocation, and state that such revocation occurs when the method of revocation is reasonable, under the totality of the circumstances.

Accordingly, the Court cannot agree that Plaintiff states a claim for a violation of the TCPA where she alleges only that a caller designated an exclusive means of revoking consent;

Plaintiff must also allege that the designated exclusive means for revoking consent made it difficult or impossible to effectuate her actually-attempted revocation, and that <u>her</u> chosen method of revocation was reasonable. This is so because her method of revocation must be reasonable to be effective, and without an effective revocation of consent, a plaintiff cannot state a claim that she was called without her consent.

Restated differently, if Plaintiff seeks to hold Defendant liable for sending messages after Plaintiff revoked consent, she must allege that Defendant continued to contact her after she revoked her consent to be contacted. In order to plead that she successfully revoked that consent, she must put forth factual allegations that would tend to show that her method of revocation was reasonable, given the totality of the circumstances. The Court therefore next addresses that question.

Other courts have held that responding to text messages that include, as here, the clear directive "Reply STOP to cancel" (or "Reply HELP for help, STOP to cancel[,]" <u>Viggiano</u>, 2017 WL 5668000 at *3, or "Text STOP to end, HELP for help + T&C's[,]" <u>Epps v. Earth Fare</u>, 2017 WL 1424637, at *2) fails to state a claim for violation of the TCPA because a plaintiff who does not reply "STOP" but instead texts back a verbose sentence with the same sentiment does not use a reasonable method to

revoke consent. See Viggiano, 2017 WL 5668000 at *4; Epps v. Earth Fare, 2017 WL 1424637 at *5.

Plaintiff argues that this Court should not afford persuasive value to Viggiano in particular because "that court inferred an intent requirement in the TCPA based on a fleeting sentence in a particular FCC final order ('We caution that callers may not deliberately design systems or operations in ways that make it difficult or impossible to effectuate revocations.')." [Docket Item 19 at 2-3, citing Viggiano, 2017 WL 5668000 at *7.] The Court does not understand the Viggiano decision to infer such an intent requirement, but rather simply holding that the plaintiff there did not state a claim under the TCPA because she could not plausibly allege that she reasonably revoked her consent to be contacted, under the totality of the circumstances.

The Court finds that, for a consumer who previously gave consent, a claim under the TCPA requires stating grounds for these elements: (1) that she attempted to revoke consent by reasonable means, under the totality of the circumstances; (2) that the caller provided only means that were unduly burdensome or overly restrictive (in that they did not effectuate her reasonable attempts at revocation); and (3) that she continued to receive calls. To the extent that Plaintiff's claim here is vulnerable to arguments that her means of revocation was not

reasonable, the Court allows that Plaintiff may be able to cure

that defect by alleging factual grounds to support the

proposition that her means of revocation was, under the totality

of the circumstances, reasonable.

The Court hastens to add that it seems possible that a

consumer could, under the totality of the circumstances, text

back a non-compliant text message in an attempt at revocation

that was, despite that non-compliance, reasonable.[5] But this

Court is not presented with that question. Instead, the Court is

to determine whether this Plaintiff properly states a claim that

she was contacted in violation of the TCPA, which she can only

---

[5] See, e.g., Lanteri v. Credit Protection Association L.P., No.
1:13-cv-1501-WTL-MJD, 2017 WL 3621299, at *2-*4 (S.D. Ind. Aug.
22, 2017)(plaintiff proposed class of people who sent one of six
non-compliant text messages in effort to revoke consent to be
texted, including "STOP TEXT," "STOP CALLIN," "STOP SENDIN,"
"PLEASE STOP" "PLZ STOP," or "the first two letters of the
message 'RE' followed by 2 non-alpha characters, followed by the
exact phrase 'STOP' (such as 'RE:|STOP')," although plaintiff
herself texted back "stop"; court, in finding a lack of
typicality, stated that "[b]ecause none of the messages comply
[perfectly] with the opt-out instruction [requesting that
individuals reply 'STOP' to opt out of receiving text messages],
whether an individual revoked consent to receive text messages
becomes an issue central to liability in this case," and that
court would need to "determine whether each of the [six] text
messages . . . and the message sent by the Plaintiff constitute
revocations of consent. . . . [W]hether revocation occurred in
each instance depends on whether a particular text message is a
reasonable revocation. To make those determinations, the Court
would be required to examine facts related to the Plaintiff's
reply message, as well as to each of the six text messages
individually, and the Court will not analyze the merits of the
case here")(internal quotations and citations omitted).

claim if she properly revoked her consent. Thus, this Court is not presented with the question of whether, e.g., texting back "stop" or "PLEASE STOP" or "STOP." or "STOP STOP" instead of "STOP" would constitute a reasonable method of revocation. Instead, this Court need only address whether this Plaintiff's method of revocation was reasonable, under the totality of the circumstances.

The Court finds that Plaintiff has failed to allege facts supporting a plausible claim that she revoked her consent "using [a] reasonable method." 30 FCC Rcd. at 7996 ¶ 64. When presented with the direction "Reply HELP for help. STOP to cancel," Plaintiff instead replied: "Take my contact info off please." While she did not, as in Viggiano, 2017 WL 5668000 at *3 or Epps v. Earth Fare, 2017 WL 1424637 at *2, receive a responsive text message saying that her text was not understood, she nevertheless continued to receive text messages ending with the directive "Reply HELP for help. STOP to cancel[,]" and continued to respond in the same unproductive manner: "Thank you. I'd like my contact info to be removed"; "Checking in today to see if my information is removed"; "Haven't heard from this service"; "I want to confirm I have been removed off your contacts"; "I'd like to be removed from this"; "I asked to be removed from this service[.]" [Docket Item 5-3 at 2.] Finally, Plaintiff responded on December 21, 2016, using for the first time some permutation

19

of the word "stop": "I asked to be removed from this service a few times. Stop the messages" and, six days later, "I still want to stop the service[.]" Id. She then received another text message, again, ending in "Reply HELP for help. STOP to cancel[,]" but again responded with a sentence: "Again I want to stop this service thank you[.]" Id. It appears that Plaintiff then received one more text message--yet again, ending with "Reply HELP for help. STOP to cancel." Id.

The Court finds that, in the totality of the circumstances, a reasonable person seeking to revoke consent would have tried, at least at some point during the back-and-forth, simply replying "STOP" to cancel--as instructed, rather than ignoring Defendant's revocation method and sending ten long text messages to that effect, most of which did not include the word "stop" at all. There can be no question on these factual allegations but that Plaintiff did not comply, nor even attempt to comply, with the apparently simple directions repeatedly given to her: "Reply . . . STOP to cancel."

The Court concludes that, given the factual circumstances alleged by Plaintiff, she does not plausibly state a claim that she used a reasonable means of revoking her consent, in part because it cannot be fairly said that she "had a reasonable expectation that . . . she could effectively communicate . . . her request for revocation to the caller in that

circumstance[.]" 30 FCC Recd. at ¶ 64 n.233. Her failure to
follow the apparently clear and apparently non-burdensome opt-
out instructions remains unexplained. <u>See also</u> <u>Viggiano</u>, 2017 WL
5668000, at *4 ("the facts in the Complaint suggest Plaintiff
herself adopted a method of opting out that made it difficult or
impossible for Defendant to honor her request. . . . Plaintiff
does not allege Defendant[] purposefully made opting out
difficult or impossible. Rather, Plaintiff bases her claim on
the fact that Defendant specified a means of opting out. The
FCC's ruling[s] are clear--a caller may not designate a method
of opting out 'in ways that make it difficult or impossible to
effectuate revocations[.]' Plaintiff's arguments to the contrary
defy both the FCC's rulings and common sense."); <u>Epps v. Earth</u>
<u>Fare</u>, 2017 WL 1424637 at *5 ("The totality of the plausibly
alleged facts, even when viewed in Plaintiff's favor, militate
against finding that Plaintiff's revocation method was
reasonable. Without explanation, Plaintiff ignored Defendant's
clear instruction to stop the messages. Furthermore, although
Plaintiff is correct that Defendant 'may not abridge
[Plaintiff's] right to revoke consent using any reasonable
method' and 'may not deliberately design systems or operations
in ways that make it difficult or impossible to effectuate
revocations,' Plaintiff has not plausibly alleged any such
burden here. In fact, heeding Defendant's opt-out instruction

would not have plausibly been more burdensome on Plaintiff than sending verbose requests to terminate the messages. In sum, Plaintiff has not plausibly alleged that her revocation was effective.")(internal citations omitted).[6]

Because the Court has found that Plaintiff does not plausibly state a claim for relief under the TCPA pursuant to Fed. R. Civ. P. 12(b)(6), the Court need not address whether Plaintiff has failed to adequately plead that Defendant used an ATDS. The Court similarly need not address Defendant's argument in the alternative that the class allegation be stricken.

The Court has given serious consideration to Defendant's request that the motion be granted and the complaint be dismissed with prejudice [Docket Item 17 at 2-3, citing Epps v. The Gap, Inc., No. 17-3424-MWF (PLAx), at *1, *5 (C.D. Cal. June 27, 2017)(granting motion to dismiss with prejudice because "Plaintiff's purported means of requesting the messages to stop was unreasonable as a matter of law, for the reasons set forth in Epps v. Earth Fare, Inc.," and noting that while it "may be

---

[6] The Court has reviewed the supplemental authority propounded by Plaintiff [Docket Item 16] and does not find that it materially alters the Court's analysis. While the Court notes with interest the denial of the motion to dismiss in Johnson v. Redbox Automated Retail, LLC, Case No. 2:16-cv-02895-JAM-DB (E.D. Cal. May 2, 2017), the Court cannot grant that decision persuasive power without some explication for the basis of the ruling, which was made via text order to the docket and without further explanation.

true" that "FCC rule prohibits a caller from limiting the means by which a consumer revokes consent[,]" "it does not change the Court's conclusion that under the totality of the circumstances Plaintiff's method of revocation was not reasonable" under [30] FCC Rcd. at 79[96] ¶ 64 n.233)].

The Court will nevertheless dismiss without prejudice because such amendment does not appear to be futile in its ability to address the above deficiencies of the present pleading. Plaintiff may file a motion for leave to file an amended complaint that plausibly alleges that she revoked her consent to be contacted using a reasonable method, under the totality of the circumstances, taking into account Defendant's prescribed revocation method. In preparing such a proposed amended complaint, Plaintiff is advised to be mindful of the question of "whether [she] had a reasonable expectation that. . . she could effectively communicate . . . her request for revocation to [EA]" via her chosen method of revocation, instead of the sender's method of revocation.

While the Court does not express an opinion on the merits of Defendant's argument that the Complaint only alleged the use of an ATDS in a conclusory fashion, Plaintiff may wish to address such allegations as well in any proposed Amended Complaint.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss without prejudice. Plaintiff may file a motion for leave to amend the complaint to address the deficiencies noted herein within thirty (30) days from the entry of this Opinion and Order upon the docket. The accompanying Order will be entered.


__March 28, 2018__                      __s/ Jerome B. Simandle__
DATE                                    JEROME B. SIMANDLE
                                        U.S. District Judge